IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| CARNIVORE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:21-cv-00023 |
| | ) |
| UBUNTO CHI LLC, f/k/a NORTECH | ) JUDGE CAMPBELL |
| PACKAGING, LLC d/b/a TISHMA | ) MAGISTRATE JUDGE HOLMES |
| TECHNOLOGIES, and INTERTAPE | ) |
| POLYMER CORP. | ) |
| | ) |
| Defendants | ) |

## MEMORANDUM

Plaintiff Carnivore LLC ("Carnivore") initiated this action on April 6, 2021, against Defendants Intertape Polymer Corp. ("Intertape") and Ubunto Chi, LLC, f/k/a Nortech Packaging, LLC ("Nortech") alleging claims arising out of the sale of a "Pouch Fill and Seal Machine." (Doc. No. 1). On September 8, 2021, Carnivore filed the First Amended Complaint (Doc. No. 30), which Defendants move to dismiss. Now pending before the Court are Defendants' motions to dismiss (Doc. Nos. 35, 45), which are fully briefed (Doc. Nos. 36, 46, 48, 51, 52, 53).

### I. FACTUAL ALLEGATIONS

Carnivore is in the business of producing and packaging meat jerky products. (Am. Compl., Doc. No. 30 ¶ 8). In 2019, Carnivore began discussions with Nortech regarding purchasing a machine to fill and seal pouches of its products. (*Id*. ¶¶ 11-13). On January 21, 2020, Nortech sent Carnivore a Proposal and Purchase Agreement. (*Id*. ¶¶ 14-15). Carnivore never signed the Purchase Agreement. (*Id*. ¶ 15). It did, however, send Nortech a purchase order. (*Id*. ¶ 16). Nortech subsequently submitted a sales order to Carnivore. (*Id*.). Carnivore and Nortech continued to

discuss the specifications of the machine for several months and agreed to additional terms, conditions, and specifications. (*Id*. ¶¶ 17, 18, 22).

In February 2020, Nortech notified Carnivore that it was being acquired by Intertape and that Nortech would continue to operate as a business group within Intertape. (*Id*. ¶ 24, 25). Carnivore paid the initial deposit to Nortech. (*Id*. ¶ 26). Thereafter, it was instructed to make subsequent payments to Intertape. (*Id*.). By June 2020, Carnivore had paid the full purchase price of $396,957. (*Id*. ¶ 34, 55).

The final acceptance test ("FAT") was conducted on November 20, 2020, nearly six months behind schedule. (*Id*. ¶ 38). The FAT showed the machine had numerous "defects and operational issues." (*Id*. ¶ 40). Defendants told Carnivore that the problems with the machine were "mere programming issues" that would be resolved during installation. (*Id*. ¶ 43). Defendants delivered the machine to Carnivore on December 1, 2020, but were unable to make it operate as intended. (*Id*. ¶¶ 46-55). Among other issues, Carnivore cites problems with the programming, a defect in the solenoid, metal shavings falling into the product chute, and product being discharged onto the floor. (*Id*.).

Carnivore alleges that it notified Defendants of the defects during the FAT and installation, and in subsequent emails. (*Id*. ¶ 56). On February 15 and 16, 2021, Carnivore sent Defendants emails expressly rejecting the machine and demanding a refund of the purchase price. (*Id*.). Defendants responded with new quotes and proposals for $15,000 for new or replacement parts. (*Id*. ¶ 57). On February 26, 2021, Carnivore sent a letter through counsel rejecting the machine and again demanding Defendants retrieve the machine and refund the purchase price. (*Id*. ¶ 59). Defendants did not respond to the letter. (*Id*. ¶ 60).

Defendants have since made two visits to Carnivore's facility to attempt to remedy the defects in the machine. (*Id*. ¶ 61). Defendants spent multiple days on site trying to fix the issues, but the machine remained unable to process and package Carnivore's primary product. (*Id*. ¶¶ 62, 63).

Carnivore brings claims for breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. The breach of contract claims are split into two alternative counts depending on whether the Purchase Agreement is an enforceable contract.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. A complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir.

3

2008). The Proposal, Purchase Agreement, and several schematic drawings are attached as Exhibits to the First Amended Complaint. (*See* Doc. Nos. 30-1, 30-2).

### III. ANALYSIS

Intertape argues that Carnivore's submission of a purchase order after receipt of the Purchase Agreement amounts to acceptance of the Purchase Agreement under Illinois Law, and that the terms of the Purchase Agreement expressly limit Carnivore's remedies and Intertape's warranties and bar all of Carnivore's claims as a matter of law. Nortech joins this argument and additionally argues that the claims against it should be dismissed because it was acquired by Intertape, Intertape admits that the written agreement is between Intertape and Carnivore, and, after the initial deposit, Carnivore made payments to Intertape. The Court considers each of these arguments in turn.

**A. The Purchase Agreement**

Carnivore argues it would be premature to dismiss the action based on the terms of the Purchase Agreement because it has sufficiently alleged the Purchase Agreement is either unenforceable or not the entire agreement between the parties.

There appears to be no dispute that there is an enforceable contract between Carnivore and Intertape. Whether that agreement included the specific terms of the Purchase Agreement is a question the Court cannot decide at this juncture. At a minimum, Carnivore has sufficiently alleged that the Proposal and Purchase Agreement do not represent the entire agreement between the parties. The Amended Complaint alleges Carnivore did not sign the Purchase Agreement and that the parties had subsequent communications regarding "additional terms, conditions, and specifications." Intertape's argument that the subsequent communications are irrelevant because Carnivore does not allege that the "additional terms, conditions, and specifications" were essential

or material terms and Carnivore "does not identify any essential or material terms not set forth in the Purchase Agreement or that were purportedly varied during those later discussions" is not well taken.

Construing the allegations in the light most favorable to the Plaintiff, the First Amended Complaint states a colorable claim that the Purchase Agreement is either not enforceable or not the entire agreement between the parties. Accordingly, dismissal is not warranted on grounds that the claims are barred by the Purchase Agreement.

**B. Nortech**

Carnivore argues that, notwithstanding the acquisition by Intertape, and particularly given the absence of detail concerning the transaction between Nortech and Intertape, it has plausibly asserted that Nortech remains liable under the agreement. Carnivore cites the fact that Nortech's name is on the Proposal and Purchase Agreement, the allegations that Carnivore made part of the payment for the machine directly to Nortech, and that Nortech is operating as a business group within Intertape.

The Court finds these allegations are sufficient to plausibly allege that Nortech remains liable under the agreement. Although the precise terms of the agreement remain in question, the allegations in the First Amended Complaint do not foreclose the possibility that Nortech is liable notwithstanding the acquisition.

## IV. CONCLUSION

For the reasons stated, Intertape's Motion to Dismiss (Doc. No. 35) will be DENIED, and Nortech's Motion to Dismiss (Doc. No. 45) will also be DENIED. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE